**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TARIQ MUJAHID,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>KATHRYN MCFARLAND, et al.,<br><br>　　　　　Respondents. | Civil Action No. 04-135(JAG)<br><br>**O P I N I O N** |

**APPEARANCES:**

Tariq Mujahid, <u>Pro Se</u>
#293728/324726B
Southwoods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

Carol Marie Henderson
Assistant Attorney
Office of the New Jersey Attorney General
Appellate Section
P.O. Box 086
Trenton, NJ 08625
Attorney for Respondent

**GREENAWAY, District Judge**

　　　Petitioner, Tariq Mujahid, filed the within petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 [Docket Entry #1]. Respondents have filed an Answer. The Court has considered all submissions. For the reasons set forth below, the Petition will be denied.

## BACKGROUND

1. <u>Factual Background</u>

The facts of this case are recounted below.  This Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation:

> The convictions arose from the following evidence.  Prior to September 3, 1996, the Moon Pizza, a restaurant located in Newark, had been the target of an arsonist on three occasions [it is undisputed that defendant had no involvement in these arsons].  The owner of the pizzeria, Muhammad Wajid, thought John Farhad, the owner of a restaurant across the street, was setting the fires.  He hired his cousin Muhammed Nassem to watch the pizzeria at night from an apartment owned by Imran Miran and located above the adjacent grocery store.  During the early morning hours of September 3, 1996, Nassem was watching the roof of the pizzeria through the window of the apartment.  He saw defendant on the roof with a container of gas.  Imran Miran, too, saw defendant, and he saw John Farhad as well.  When Nassem confronted the defendant, asking him who he was, Farhad ran away.  Defendant, however, replied to Nassem's inquiry, saying "I don't want to do anything, I just came over here . . . I am your Muslim brother, I didn't do anything but Farhad had paid me money to do this."  He then fled.
>
> The next morning a detective from the Newark Fire Department arson squad responded to the scene and found an extension cord and an unopened five gallon gas container on the roof.  As he was taking a statement from Nassem, Nassem pointed out defendant across the street in front of Farhad's restaurant.  Defendant was arrested.  Two disposable Bic lighters were found on him, but no accompanying cigarettes or cigars.  At the police station, and after waiving his <u>Miranda</u> rights, defendant gave a statement.  He said just prior to the incident on the roof, he had gone into Farhad's establishment.  The following occurred:
>
>> "I ordered spring water and a loose cigarette.  The man that was working behind

> the counter, his name is John. He asked
> me, he said are you going to go over there
> and do that for me? I said I am not going
> to do that, man, I just got out of jail.
> He said I was in the store that has the gas
> station connected to it. Will pay you four
> hundred. I said, let me think about it.
>
> [John] said I got the gas. I said man let
> me think about that. John then said I got
> the gas for you, come around the back. I
> said slow down, man, I still got to think
> about that.
>
> John met me at the side of the store and
> handed me the gas. I put it down and
> walked away from it. I then walked around
> the corner of 18th street. I looked up at
> the roof, 819 Clinton Avenue and saw a
> light on. Then when I went back to the gas
> station John asked me, what is up? I said
> slow down man. I picked up the can and
> went to the alley way and stopped. I said
> to myself, I am going to take this gas to
> the owner of the store at 18th street
> because I was not going to burn it.
>
> I brought the gas on top of the roof. I
> went to the window, one of the guys came to
> the window and asked me what I was doing up
> there. I said John wanted me to burn the
> building down. He said what are you doing
> with the gas? I said I just told you."
>
> Defendant told the police that Farhad promised to pay him
> after the job was accomplished.

(State v. Barrett, A-834-97T4 (December 16, 1998), pp. 2-3).

2. Procedural History

On December 17, 1996, an Essex County Grand Jury indicted Petitioner on two counts, including: second degree conspiracy to commit arson, contrary to N.J. STAT. ANN. 2C:5-2 and 17-1 (count

one); and first degree aggravated arson, contrary to N.J. STAT. ANN. 2C:17-1a (count two).

On July 3, 1997, a jury returned a guilty verdict against Petitioner on both counts of the indictment. The Court sentenced Petitioner under a persistent offender, extended sentence provision, to a custodial term of fifty years with a twenty-year period of parole ineligibility.

Petitioner appealed[1] and on December 16, 1998, the Superior Court of New Jersey, Appellate Division, affirmed Petitioner's convictions but remanded for a statement of reasons for the extended term sentence. On June 9, 1999, the Supreme Court of New Jersey denied Petitioner's Petition for Certification.

On September 17, 1999, the Honorable Mahlon L. Fast, J.S.C., reduced Petitioner's sentence to a term of twenty years, with ten years of parole ineligibility. On January 21, 2000, Petitioner filed a Petition for Post-Conviction Relief ("PCR") with the Superior Court of New Jersey, Law Division.[2] On January 31,

---

[1] Petitioner raised the following claims on appeal: (1) The Trial Court Erred by Failing to Charge the Jury as to the Requirement that Confessions be Corroborated; (2) The Trial Judge Repeatedly Misinstructed the Jury that Defendant Must be Found Guilty if the Elements of the Crimes were not Proved Beyond a Reasonable Doubt, in Violation of the Fifth and Sixth Amendments; and (3) The Sentence Imposed is Manifestly Excessive.

[2] Petitioner raised the following grounds in his PCR petition: (1) Trial Counsel was Ineffective; (2) The Ineffectiveness of Trial Counsel Deprived Petitioner of his Right to Counsel; (3) The Charge to the Jury Deprived Defendant of the Fourteenth Amendment Right to a Fair Trial; and (4) The Verdict

2002, a hearing was held on the PCR petition and the court denied the petition, that same day.

Petitioner appealed the denial of the PCR petition to the Superior Court of New Jersey, Appellate Division.[3]  On February 27, 2003, the Appellate Division affirmed the denial of Petitioner's PCR petition.  Petitioner then filed for certification with the New Jersey Supreme Court, which was denied on June 20, 2003.

On January 12, 2004, Petitioner filed the instant habeas corpus petition, pursuant to 28 U.S.C. § 2254.  Petitioner remains incarcerated with a September, 2006, parole eligibility date.

## DISCUSSION

**Petitioner's Claims.**

Petitioner asserts the following arguments for habeas relief:

> Ground One - Petitioner's Conviction was Obtained by use of a Coerced Confession.
>
> Ground Two - Petitioner's Conviction was Obtained by a Violation of the Privilege Against Self-Incrimination.

---

was Against the Weight of the Evidence, Violating Defendant's Right to Due Process of the Law.

[3] Petitioner's PCR appeal raised the following issue: (1) The Court Erred when it Refused to Provide an Evidentiary Hearing to Defendant and Denied him his Rights under the United States and New Jersey Constitutions.

5

>Ground Three - Petitioner was Denied Effective Assistance of Counsel.

>Ground Four - The Court Erred When it Refused to Provide an Evidentiary Hearing to Defendant and Denied him his Rights Under the United States and New Jersey Constitutions.

See Petition for Writ of Habeas Corpus.

**A.   Pro Se Standard.**

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.   Petitioner's Writ of Habeas Corpus Is Procedurally Barred.**

Petitioner has failed to raise and/or exhaust several of the issues he presents in the instant petition.  As such, his petition shall be dismissed as procedurally barred.

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render

such process ineffective ... ."[4]  28 U.S.C. § 2254(b)(1).  See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").

The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at 516-18.  Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review.  Rose, 455 U.S. at 519.

A petitioner must exhaust state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ("requiring state prisoners [in

---

[4] Exhaustion of state remedies has been required for more than a century, since the Supreme Court's decision in Ex parte Royall, 117 U.S. 241 (1886).  The exhaustion doctrine was first codified at 28 U.S.C. § 2254 in 1948, see Rose v. Lundy, 455 U.S. 509, 516-18 (1982), and was the subject of significant revisions in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1217 (April 24, 1996).

7

order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Ross v. Petsock, 868 F.2d 639 (3d Cir. 1989); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Picard v. Connor, 404 U.S. 270, 275 (1971); Castille v. Peoples, 489 U.S. 346, 350 (1989).

    The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition. Picard, 404 U.S. at 275. Reliance on the same constitutional provision is not sufficient; the legal theory and factual predicate must also be the same. Id. at 277.

    Where any available procedure remains for the applicant to raise the question presented in the courts of the state, the applicant has not exhausted the available remedies. 28 U.S.C. § 2254(c). The Supreme Court has made clear that a § 2254 petition which includes unexhausted as well as exhausted claims, *i.e.*, a

"mixed petition", must be dismissed without prejudice.  In other words, if any of the claims asserted in the habeas petition are unexhausted, the entire petition must be dismissed.  <u>See</u> <u>Rose</u>, 455 U.S. at 510 (this is referred to as the "total exhaustion" rule).  However, in <u>Crews v. Horn</u>, 360 F.3d 146 (3d Cir. 2004), the Third Circuit has held that, while district courts have the discretion to stay "mixed petitions", when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action.  360 F.3d at 152.

In the present case, it appears based on the state record, that Petitioner failed to exhaust all state remedies before seeking federal habeas relief regarding certain claims asserted in the instant petition.  Specifically, Petitioner's allegations that his confession was coerced, that his right against self-incrimination was violated and that he received ineffective assistance of counsel were never raised in state appellate courts.

Therefore, Grounds One through Three were never fully exhausted on the state level, and Petitioner has failed to exhaust all state remedies regarding those Grounds.

In addition, there is no indication from Petitioner's habeas motion that Petitioner's non-exhaustion of state court remedies should be excused.  Petitioner has not shown that there is an absence of available state process with respect to his

unexhausted claims. Before exhaustion will be excused on this basis, "state law must clearly foreclose state court review of unexhausted claims." Toulson, 987 F.2d at 987.

Thus, as a matter of comity, it is best left to the New Jersey courts to determine if they can still entertain Petitioner's unexhausted claims. District courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits. Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies").

Here, no state court has concluded that Petitioner is procedurally barred from raising his unexhausted claims. Therefore, because New Jersey law does not clearly require a finding of default, this Court is not prepared to presume that Petitioner's claims in this petition would necessarily be barred from state court review.

Alternatively, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the

10

activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused." Mayberry v. Petsock, 821 F.2d 179, 184 (3d Cir.), cert. denied, 484 U.S. 946 (1987). However, discovery and an evidentiary hearing should not be made available to a habeas petitioner who claims relief from the exhaustion rule "unless the petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response, if any, to determine if further proceedings are appropriate." Id. at 186. "[T]he allegations of exhaustion must be at least as specific with respect to the facts allegedly excusing exhaustion as is required for allegations alleging constitutional deprivation as the basis for the habeas petition." Id. at 187. Here, Petitioner alleges no facts suggesting that state procedures are in effect unavailable to him.

Finally, in determining whether an unexhausted petition should be stayed or dismissed, the Supreme Court of the United States has opined that district courts "should stay, rather than dismiss mixed petitions . . . if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Rhines v. Weber, 544 U.S. 269 (2005). In Petitioner's present motion for habeas corpus relief, he offers no cause for his

11

failure to exhaust and, based upon prior state court rulings, does not appear to present meritorious claims.

Therefore, the petition will be dismissed without prejudice as a mixed petition as Petitioner has failed to exhaust state court remedies for Grounds One through Three of his petition.

**C.    Certificate of Appealability.**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in

12

its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find the Court's procedural disposition of this case debatable. Accordingly, no certificate of appealability will issue.

## CONCLUSION

For the foregoing reasons, this Court finds that Petitioner has failed to exhaust his available state court remedies or to allege facts sufficient to excuse failure to exhaust. This Court shall dismiss, without prejudice, the § 2254 habeas petition for failure to exhaust available state court remedies.

Further, this Court finds that no certificate of appealability will issue, insofar as Petitioner has failed to make a substantial showing of the denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c)(2). An appropriate Order accompanies this Opinion.


                         S/Joseph A. Greenaway, Jr.
                         JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: May 26, 2006